# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DANIEL J. LEVITAN, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 06-0031 (GK)** |
| ) | |
| **ALBERTO GONZALES, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

Federal defendants, Alberto Gonzales, Attorney General; Harley G. Lappin, Director of the Federal Bureau of Prisons ("BOP"); R.E. Holt, Southeast Regional Director, Federal Bureau of Prisons; Michael A. Zenk, Warden, USP Atlanta; Three Unknown named Employees of the BOP Food Service Program Review Team of 2005; and Three Unknown Named Employees of the BOP Mechanical Services Department, by and through undersigned counsel, hereby respectfully move, pursuant to Fed. R. Civ. P. 12 (b)(1), (2), (3), (5), and (6), for dismissal of this action for lack of subject matter jurisdiction, personal jurisdiction, improper venue, insufficiency of service of process, and failure to state a claim upon which relief may be granted.[1]  In the alternative, in the event that the Court determines not to dismiss this case, defendants move pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. §§ 1404(a), that the Court exercise its discretion

---

[1]  Defendants Gonzales, Lappin, Holt, and Zenk appear in their official capacities only. They have not been served personally, so do not appear to be a party in their personal capacity at this time, and defendants should be deemed to preserve all defenses available to them, including insufficiency of service of process and immunity from suit.

to transfer venue to the Northern District of Georgia, Atlanta Division, the judicial district where the alleged incidents took place.

In support of this motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities, the Westfall Certification of Michael Zenk, and the declaration of Delaine Martin Hill, Assistant General Counsel for the Federal Bureau of Prisons. A proposed Order consistent with the relief sought herein is attached.

Respectfully submitted,


___/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


___/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 307-1249
(202) 514-8780 (facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DANIEL J. LEVITAN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-0031 (GK)** |
| | ) | |
| **ALBERTO GONZALES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT, OR
IN THE ALTERNATIVE, TO TRANSFER**

Defendants hereby submit this memorandum of law in support of their motion pursuant to

Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3), (b)(5), and 12(b)(6).

**I.    Introduction**

Plaintiffs, *pro se* in this action, are federal inmate Daniel Levitan (Reg. No. 22977-037),

federal inmate John Phillips (Reg. No. 10527-075), and Pamela May, a Florida resident identified

as "next friend" of Daniel Levitan. Inmate Levitan was sentenced to 155 months and 30 months

concurrent for violations of 18 U.S.C. § 371 and 18 U.S.C. § 1956(A)(3)(B), Conspiracy and Money

Laundering. He is currently incarcerated in the United States Penitentiary (USP) in Atlanta, Georgia,

and has been there since October 21, 2004. His projected good conduct release date is March 11,

2007. See Inmate Public Information Data Sheets. Inmate Phillips was sentenced to 46 months for

violations of 18 U.S.C. §922(g)(1), Convicted Felon in Possession of Firearm (previous conviction

for Distribution of Cocaine and Aiding & Abetting). He is currently incarcerated in the United States

Penitentiary in Atlanta, Georgia, and has been there since July 7, 2003. His projected good conduct

release date is November 14, 2006. <u>See</u> Inmate Public Information Data Sheets.

**Factual Background**

It can be construed that plaintiffs filed this current action on January 9, 2006 pursuant to <u>Bivens</u>[2] and the Federal Tort Claims Act, 28 U.S.C. § 2674. Plaintiffs allege that while confined in USP Atlanta, they were subjected to overcrowding and an incident of food poisoning in violation of their Eighth Amendment rights and rights under the Federal Tort Claims Act. <u>See</u> Compl. ¶¶ 35-43 and 15-34.

In the complaint, plaintiffs Levitan and Phillips allege that they fell ill on September 5, 2005 after eating food that had been improperly refrigerated. <u>See</u> Compl. ¶ 29. Plaintiffs allege that Mechanical Services had been notified several times over the prior 6 months that food equipment needed repair. <u>Id.</u> at ¶ 22. Additionally, plaintiffs allege that defendants Zenk and Holt were aware of the food sanitation problems by way of weekly reports. <u>Id.</u> at ¶ 23. Plaintiffs make no facts or statements that they, or any other prisoners, have suffered from food poisoning except for this one instance. With regard to plaintiffs' complaints of overcrowding, plaintiffs allege that they were housed in insect-infested cells with three to five inmates and made to sleep on dirty mattresses. <u>Id.</u> at ¶ 27. Plaintiffs offer no factual basis for when they were subjected to alleged overcrowding, whether the overcrowding is ongoing or was, in fact, temporary. Finally, plaintiffs allege that they were placed in close proximity to waste facilities, were required to wash clothes without proper laundry facilities, and were not allowed adequate exercise periods. <u>See</u> Compl. at ¶ 45.

Plaintiffs make no specific allegations against defendants Gonzales, Lappin, and Watts, beyond allegedly having notice of plaintiffs' complained of conditions of confinement. These

---

[2] <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

defendants appear to have been sued only as a result of their supervisory positions within the Federal Bureau of Prisons.

Plaintiffs request $75,000 in compensatory damages, severally and jointly, against defendants Lappin, Holt, and Zenk.  See Compl. ¶47.  Plaintiffs seek similar damages against the unknown defendants.  Id. at ¶ 49.  Plaintiff Levitan seeks $75,000 in damages against defendant Zenk and the unknown defendants under the FTCA.  Plaintiff Phillips seeks $75,000 in damages against defendant Zenk and the unknown defendants under the FTCA.  Plaintiffs also seek declaratory relief in the form of a writ of mandamus against defendants directing the immediate repair of food holding and preparation equipment, the transfer of overcrowded inmates from the DCU facility to other BOP facilities, and an order directing defendants not to exact punitive measure against the plaintiffs.  Id. at ¶ 50.

## II.    Standard of Review

### A.    Requests for Dismissal

Defendants move for dismissal of plaintiffs' complaint under Rule 12(b)(1), lack of subject matter jurisdiction, 12(b)(2), lack of personal jurisdiction, 12(b)(3), improper venue, 12(b)(5), insufficiency of service of process, and 12(b)(6), failure to state a claim.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint.  Atchinson v. District of Columbia, 73 F. 3d 418, 421 (D.C. Cir. 1996).  A complaint may be dismissed for failure to state a claim upon which relief may be granted, if the facts pled and reasonable inferences therefrom are legally insufficient to support the relief requested.  Appleton v. United States, 69 F. Supp. 2d. 83, 86 (D.D.C. 1999).  In reviewing a motion to dismiss, whether on grounds of lack of jurisdiction over the subject matter or for failure to state a cause of action, all

factual allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Scheuer v. Rhodes, 416 U.S. 232 (1974).  The court need not, however, accept as true the plaintiffs' legal conclusions.  See Taylor v. FDIC, 132 F.3d 753, 762 (D.C. Cir. 1997).  From the facts alleged in the complaint in this case, plaintiffs can prove no set of facts that would entitle them to relief.

## III. Argument

### A. Plaintiffs Have Not Perfected Service Against the Individual Federal Defendants

If this action is deemed by the Court to be brought pursuant to Bivens, none of the individual defendants in this action were properly served with the complaint in accordance with the rules applicable to individual defendants.  Simpkins v. District of Columbia Government, 108 F.3d 366, 369 (D.C. Cir. 1997).  It is well established that, in an action against a federal employee in his or her individual capacity, the individually-sued defendant must be served with process in accordance with Rule 4(e) of the Federal Rules of Civil Procedure.  Id.  Rule 4(e) provides that service is effectuated by complying with the laws of the state for such in which the district court is located by delivering a copy of the summons and complaint to the defendant (or his appointed agent) personally, or by leaving copies thereof at the defendant dwelling house or usual place of abode with some person of suitable age and discretion who resides there.  Fed. R. Civ. P. 4(e).  The SCR-Civil 4(e)(2) allows for service upon individuals by first class, certified or registered mail.  Actual notice will not, of course, substitute for technically proper service under Rule 4 and will not permit the Court to render a personal judgment against an individually-sued

defendant.  Sieg v. Karnes, 693 F.2d 803 (8th Cir. 1982); See also Stafford v. Briggs, 444 U.S. 527 (1980).

In this case, plaintiffs served the individual defendants at their place of employment. Service at the defendants' place of employment is not, however, proper service.  Because the record in this action is devoid of any evidence of proper personal service upon the federal defendants in their individual capacities, this action cannot proceed against them individually and all claims against the defendants in their individual capacity, if any are alleged, should be dismissed.

The District Court will lack jurisdiction over the federal officials, until all of the provisions of Rule 4(i)(1) and (2) are met.  Ecclesiastical Order of the Ism of Am, Inc. v. Chasin, 845 F.2d 113, 116 (6th Cir. 1988); Sanchez-Mariani v. Ellingwood, 691 F.2d 592, 594 (1st Cir. 1982).  It is the plaintiff in a civil action who has the burden of establishing the validity of service of process.  Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993); Lensel Lopez v. Cordero, 659 F. Supp. 889, 890 (P.R. 1987).  If that cannot be demonstrated, this case should be dismissed based upon insufficiency of service of process under Rule 12(b)(5).  Accordingly, claims against the individual defendants should be dismissed.

## B.    *Respondeat Superior* **Liability Is Not Available in Bivens**

Defendants Alberto Gonzales, Attorney General; Harley G. Lappin, Director of the Federal Bureau of Prisons ("BOP"); and R.E. Holt, Southeast Regional Director, Federal Bureau of Prisons are not personally liable for the constitutional torts of employees they supervise under the doctrine of *respondeat superior*.  Monell v. Department of Social Services, 436 U.S. 658 (1978); Cameron v. Thornburgh, 983 F.2d 253, 258 (D.C. Cir. 1993); Meyer v. Reno, 911 F.

5

Supp. 11, 15 (D.D.C. 1996). In <u>Cameron</u>, the D.C. Circuit dismissed the Attorney General and

Director from the suit because the complaint failed to allege their personal involvement and was

based solely "on the bare assumption" that policy decisions in the District of Columbia

influenced the prisoner's treatment in a federal prison in Indiana. <u>Id.</u> at 258.

In the <u>Meyer</u> case, 911 F. Supp. at 15, this Court discussed *respondeat superior* within

the context of federal inmate lawsuits:

> Absent any allegations that defendants Reno and Hawk personally participated in
> the events which gave rise to the plaintiff's claims, or any corroborative
> allegations to support the inference that these defendants had notice of or
> acquiesced in the improper securing of detainers against the plaintiff by their
> subordinates, dismissal is appropriate. <u>See Haynesworth v. Miller</u>, 820 F.2d
> 1245, 1259 (D.C. Cir. 1987) (fellow government employees cannot be held liable
> under the theory of *respondeat superior* for either constitutional or common law
> torts); <u>Smith-Bey v. District of Columbia</u>, 546 F. Supp. 813, 814 (D.D.C. 1982)
> (same). *Respondeat superior* has been consistently rejected as a basis for the
> imposition of § 1983 or <u>Bivens</u> liability. <u>See, e.g.</u>, <u>Monell v. Dep't of Social
> Srvcs.</u>, 436 U.S. 658, 691 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Boykin
> v. District of Columbia</u>, 689 F.2d 1092, 1097-99 (D.C. Cir. 1982); and <u>Tarpley v.
> Greene</u>, 684 F.2d 1, 9-11 (D.C. Cir. 1982). Therefore, any potential § 1983 or
> <u>Bivens</u> claims against these defendants, whose only relationship to the instant
> litigation is their ultimate supervisory status, must be dismissed.

"Without a showing of direct responsibility for the improper action, liability will not lie against a

supervisory official. A causal connection, or an affirmative link, between the misconduct

complained of and the official sued is necessary." <u>Wolf-Lillie v. Sonquist</u>, 699 F.2d 864, 869

(7th Cir. 1983). Individual liability for damages for violation of constitutional rights is

predicated upon personal responsibility. <u>Schultz v. Baumgart</u>, 738 F.2d 231, 238 (7th Cir. 1984).

Plaintiffs make no allegations to support a claim against defendants Gonzalez, Lappin, or

Holt in their individual capacity. Plaintiffs have failed to present any basis to establish that these

three defendants were personally involved in, or had knowledge of, the alleged constitutional

6

violations and failed to take any action. There is no allegation that these three defendants participated in any decision or approved of any policy that related to the case. Rather, just as in the <u>Cameron</u> case, the plaintiffs seem to be basing their claims against these defendants in their individual capacity on an assumption that based on their positions, they bear responsibility for the acts of their subordinates. This is an insufficient basis upon which to maintain a <u>Bivens</u> claim. <u>See</u> <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

Therefore, defendants Gonzalez, Lappin, and Holt should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Federal Rules of Civil Procedure, and under the Prison Litigation Reform Act.

### C.    Failure to Exhaust Administrative Remedies

Plaintiffs have failed to exhaust their administrative remedies with regard to all claims raised in this lawsuit. Exhaustion of all stages of the administrative remedy system is mandatory before a federal action may be commenced by a prisoner. 42 U.S.C. § 1997e(a). The Bureau of Prisons' three-level administrative remedy procedure is set out at 28 C.F.R. § 542.10 *et seq.*, and provides formal review of any complaint which relates to any aspect of the inmate's confinement. Under this process, inmates are encouraged to first attempt resolution of their complaints informally by discussing the matter with a member of their Unit Team. A record of that attempt is signed by the inmate and a member of the Unit Team. If informal resolution is insufficient to resolve the matter, the inmate may file a formal complaint with the Warden within fifteen days of the date on which the basis of the complaint occurred. 28 C.F.R. § 542.13. If dissatisfied with the response from the Warden, the inmate may appeal his complaint to the Regional Director. 28 C.F.R. § 542.15. If dissatisfied with the Regional Director's response, the inmate may appeal to

the Director, National Inmate Appeals, in the Office of the General Counsel in Washington D.C.

28 C.F.R. § 542.14.  An inmate has not exhausted his remedies until he has sought review at all

three levels.  28 C.F.R. § 542.15(a).

      In <u>Booth v. Churner</u>, 532 U.S. 731 (2001), the Supreme Court held that the PLRA

requires exhaustion of all administrative remedies, regardless of whether the administrative

process provides the particular relief sought by plaintiff.  The Prison Litigation Reform Act of

1995 provides that:

> No action shall be brought with respect to prison conditions under §1983 of this title, or
> any other federal law, by a prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available are exhausted.

<u>See also</u> <u>Gibbs v. Bolden</u>, 151 F. Supp. 2d 854, 857 (E.D. Mich. 2001) (to exhaust administrative

remedies under the PLRA, prisoner must file grievance against the person he ultimately seeks to

sue).  This legislation was enacted to make the exhaustion provisions mandatory.  "Exhaustion is

now required for all action[s] . . . brought with respect to prison conditions, whether under §

1983 or any other Federal law."  <u>Porter v. Nussle</u>, 534 U.S. 516 (2002) (internal quotations and

citations omitted).  The exhaustion doctrine "enables the agency to develop a factual record, to

apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and

is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy."

<u>Christopher W. v. Portsmouth Sch. Comm.</u>, 877 F.2d 1089, 1094 (1st Cir. 1989) (citing <u>McKart</u>

<u>v. United States</u>, 395 U.S. 185, 194 (1969)).

      Thus, if a prisoner fails to exhaust available administrative remedies, his civil action must

be dismissed.  <u>Jenkins v. Haubert</u>, 179 F.3d 19, 28-29 (2d Cir. 1999).  <u>See e.g.</u>, <u>United States v.</u>

<u>Flanagan</u>, 868 F.2d 1544, 1546-47 (11th Cir. 1989) (prisoner's claim that his pre-sentence

custody should have been credited against his sentence was not properly before the court because prisoner failed to exhaust administrative remedies available through federal prison system before seeking judicial review).

Even where there is partial exhaustion, dismissal of a case is appropriate.  In <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001), the inmate plaintiff exhausted his grievance at the first level, but failed to complete all three levels of the Pennsylvania grievance process.  The Supreme Court upheld the district court's dismissal of the case for failure to exhaust administrative remedies. <u>See also</u> <u>Jackson v. District of Columbia</u>, 254 F.3d 262, 269 (D.C. Cir. 2001) ("[T]he statute means what it plainly says," the district court held; "prisoners may only file actions under federal law concerning their conditions of confinement after they have exhausted their prison's administrative remedies.").

Moreover, where an inmate includes multiple issues concerning his prison conditions, "the plain language of [42 U.S.C.] § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims."  <u>Graves v. Norris</u>, 218 F.3d 884, 885 (8th Cir. 2000).  <u>See also</u>, <u>Smeltzer v. Hook</u>, 235 F. Supp. 2d 736, 742 (W.D. Mich. 2002) ("Section 1997e(a) provides, 'No action shall be brought with respect to prison conditions under section 1983 of this title. . .until such administrative remedies as are available are exhausted.'  By using the word 'action' instead of 'claim,' Congress indicated that a prisoner is required to exhaust all claims before his action may proceed. . . . 'Had Congress intended to permit the piecemeal adjudication of claims relating to prison conditions, the statute would have precluded the bringing of unexhausted claims rather than action.'').

Plaintiffs in this case fail to allege or demonstrate that they fully exhausted their

9

administrative remedies through the Bureau of Prisons' grievance process on the claims now

before the court prior to bringing suit. Plaintiff Phillips has not filed any administrative remedies

regarding the food poisoning issue. See Hill Declaration, ¶ 7. Phillips did seek an administrative

remedy regarding overcrowding at the institutional level on December 12, 2005 and with the

BOP Southeast Regional Office on March 28, 2006, but failed to exhaust his administrative

claim. Id. Furthermore, he erroneously sought a resolution of his administrative remedy claim

after initiating this lawsuit. Id. Because Phillips did not pursue his complaints through all three

levels of the BOP's administrative remedy procedures, the issues raised in the complaint are not

justiciable by the Court and the complaint should be dismissed.

Plaintiff Levitan also did not exhaust his administrative remedies for his overcrowding

claim. See Hill Declaration, ¶ 6. He filed a claim with the BOP Southeast Regional Office on

December 3, 2004, but has not exhausted this claim. Id. Levitan sought administrative remedy

at the institutional level regarding food poisoning on November 22, 2005 and eventually

exhausted his administrative remedies regarding his food poisoning claim (March 14, 2006, and

May 9, 2006). Id. The exhaustion, however, took place subsequent to the filing of this lawsuit.

A federal prisoner cannot fulfill the PLRA exhaustion requirement by exhausting administrative

remedies after filing a complaint in Federal Court. Because Levitan did not pursue his

complaints through all three levels of the BOP's administrative remedy procedures prior to filing

suit, the issues raised in the complaint are not justiciable by the Court and the complaint should

be dismissed.

The current case is the precise type of situation in which requiring exhaustion is required.

Proper exhaustion would permit plaintiff to fully articulate his complaint, as well as allow the

10

Bureau of Prisons the opportunity to appropriately respond and address any concerns regarding conditions of confinement, without prematurely requiring court involvement. Plaintiffs have clearly circumvented the intent and the requirements of the PLRA by not fully exhausting their administrative remedies before seeking injunctive relief. Plaintiffs should not be rewarded for doing so by reaching the merits of their complaint.

To allow inmates to proceed to litigation without requiring total exhaustion encourages them to do so, and suggests to them that, at best the Bureau of Prisons, through its Wardens, Regional Directors and Central Office, will not take such allegations seriously or appropriately address inmates' needs, and at worst that these government officials would actually condone such behavior. Neither case exists. To permit plaintiffs to proceed will encourage them and other inmates to attempt to circumvent the PLRA's mandatory exhaustion requirement by simply raising similar allegations and asking for immediate injunctive relief. No such exception to the PLRA exists and the Court should dismiss this action.

### D. Defendant Officials May Not Be Sued for Damages In Their Official Capacities

The plaintiffs appear to have sued the defendants Gonzales, Lappin, Holt, and Zenk in their official capacities. To the extent that plaintiffs seek damages against these individual defendants in their official capacities, as Attorney General of the United States, Director of the Bureau of Prisons, Regional Director of the Bureau of Prisons, and Warden of USP Atlanta, their claims must be dismissed absent a waiver of sovereign immunity. Meyer v. Reno, 911 F. Supp.11 (D.D.C. 1996); Marshall v. Reno, 915 F. Supp. 426 (D.D.C. 1996); Deutsch v. U.S. Dept. of Justice, 881 F. Supp. 49, 55 (D.D.C. 1995). The inherent sovereign immunity of the

United States protects it and its agencies [such as the BOP] from suit absent express waiver. <u>See</u> <u>United States v. Nordic Village</u>, 503 U.S. 30 (1992). Sovereign immunity also bars suits for money damages against officials in their official capacities for nondiscretionary acts absent a specific waiver by the government. <u>Clark v. Library of Congress</u>, 750 F.2d 89, 101-02 (D.C. Cir. 1984). Plaintiffs' complaint does not contain any colorable basis for such a waiver. Therefore, to the extent plaintiffs assert claims for damages against the defendants in their official capacities such claims must be dismissed for lack of subject matter jurisdiction.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). In <u>Smith v. U.S. Bureau of Prisons</u>, the court dismissed the FTCA claim for lack of subject matter jurisdiction where the BOP staff members involved in the actions were sufficiently related to their official duties to entitle the U.S. to immunity under the FTCA. 169 Fed.Appx. 386, 387 (5th Cir. 2006). The Court found that all was required for purposes of immunity was that the actions had to be at least remotely related to official duties. In this case, all the individual actions were directly related to official duties and the conduct does not violate clearly established statutory or constitutional rights.

### E.   Individual Defendants Are Entitled to Qualified Immunity

In the event that this Court construes any <u>Bivens</u> claims against the individual defendants, these claims should also be dismissed because defendants are entitled to qualified immunity. Plaintiffs are seeking monetary damages against these defendants. Qualified immunity, however, shields government officials from suit in performance of a discretionary function unless that

official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Id.  The D.C. Circuit, in Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998), explained:

> In short, "[a]n official is ... entitled to summary judgment [on qualified immunity grounds] unless '[t]he contours of the right [were] sufficiently clear that a reasonable official would [have] underst[ood] that what he [was] doing violate [d] that right.' "  Harris v. District of Columbia, 932 F.2d 10, 13 (D.C. Cir. 1991) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987).

By "provid[ing] government officials with the ability reasonably to anticipate when their conduct may give rise to liability for damages," Anderson, 483 U.S. at 646, the doctrine of qualified immunity strikes a balance between compensating those injured by official conduct and protecting the government's basic ability to function.  See Harlow, 457 U.S. at 813-14.  In other words, qualified immunity is designed to mitigate the social costs of exposing government officials to personal liability--costs such as "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service."  Id. at 816; see also Harris, 932 F.2d at 13.  To this end, qualified immunity provides not simply a defense to liability, but also "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

13

In determining whether an official is entitled to qualified immunity from personal liability for money damages, there is a two-step process that must be followed by a federal court. Saucier v. Katz, 121 S. Ct. 2151 (2001). A court must always begin with this first step: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 2156. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. Therefore, if the first portion of the two-pronged test is not met, as here, there is no constitutional violation, then the defendants are entitled to qualified immunity. See Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998) (no Eighth Amendment showing of deliberate indifference by BOP Medical Director; therefore, he was entitled to qualified immunity); Verdecia v. Adams, 327 F.3d 1171, 1177 (10th Cir. 2003) ("Because Verdecia cannot meet the first portion of the two-pronged test, the defendants are entitled to qualified immunity.").

As set forth above, plaintiffs have identified no constitutional violation in this case. There is an allegation of single incident of food poisoning and alleged incidents of overcrowding. Plaintiffs have alleged no facts to indicate that Alberto Gonzales, Mr. Lappin, or Mr. Holt had any personal contact with plaintiffs or any involvement in any decision regarding their allegations. Accordingly, defendants, are entitled to qualified immunity since their actions did not violate any clearly established constitutional or statutory right of which a reasonable person would have known. See Harlow, 457 U.S. at 818.

14

E.    **The Court Has No Personal Jurisdiction over Defendant Zenk or Unknown Defendants**

1.    **The Court Has No "Long-Arm" Jurisdiction Over A Defendant Who Is Not Located Within The District.**

*In personam* jurisdiction may be maintained by the United States District Court for the District of Columbia only if permitted by the "long arm" laws of the District of Columbia.  Crane v. Carr, 814 F. 2d 758, 762 (D.C. Cir. 1987).  The District exercises personal jurisdiction based upon the D.C. Code's "long arm" statute at D.C. Code §13-423 (2000), which states in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's--
>
> > (1) transacting any business in the District of Columbia;
> > (2) contracting to supply services in the District of Columbia;
> > (3) causing tortious injury in the District of Columbia by an act or omission  in the District of Columbia;
> > (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> > (5) having an interest in, using, or possessing real property in the District of Columbia;
> > (6) contracting to insure or act as surety ...; or
> > (7) marital or parent and child relationship ...
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code §13-423 (2000).  This Court does not have personal jurisdiction over individual defendant Zenk, an employee of the BOP who resides and works outside the District of Columbia.

15

Furthermore, plaintiffs allege no facts in his complaint to establish that defendant Zenk caused plaintiffs to suffer any injury in the District of Columbia. The alleged injury of which plaintiffs complain occurred in Georgia. Therefore, the Court lacks personal jurisdiction over this individual BOP defendant under the District's long-arm statute.

Furthermore, plaintiffs have failed to allege any facts showing that the exercise of personal jurisdiction over this defendant would satisfy due process requirements. In fact, plaintiffs do not establish any connection between the defendants as individuals and the District of Columbia in their complaint. Defendants Lappin's contact with the District of Columbia through his federal employment with the BOP is insufficient to establish minimum contacts with the District of Columbia. Consequently, the Court should dismiss all claims against defendant Zenk for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

Nor can *in personam* jurisdiction be predicated on the provisions of the sections (a)(3) and (a)(4) of the D.C. "long arm" statute because plaintiffs do not and cannot claim that the federal employees at the federal prisons where they were housed outside the District caused them tortious injury within the District of Columbia. <u>Meyer v. Federal Bureau of Prisons</u>, 940 F. Supp. 10 (D.D.C. 1996) (No personal jurisdiction over Bureau of Prisons case manager working in Rochester, Minnesota, sued in D.C. in individual capacity by inmate based upon claimed inaccuracy of prison records). There is no *act* or *injury* alleged to have been accomplished within the District of Columbia by any defendant. Any injury to plaintiffs necessarily took place outside the District of Columbia, since they were never housed here and all allegations in this action pertain to their incarceration in Georgia. Therefore, this Court lacks personal jurisdiction over the federal defendants.

###           2.        Minimum Contacts

In order for the District Court for the District of Columbia to have personal jurisdiction

over a defendant, there must be established minimum contacts and the exercise of jurisdiction

must comport with "traditional notions of fair play and substantial justice." Asahi Metal Indus.

Co. v. Superior Court of Cal., 480 U.S. 102 (1987); Wiggins v. Equifax Inc., 853 F. Supp. 500

(D.D.C. 1994). "Plaintiffs' claim for relief must arise from the defendants' contacts with the

District of Columbia and his 'claims must bear some relation to the acts in the District that are

relied upon to confer personal jurisdiction.' [D.C. Code] § 13-423(b); Bayles v. K-Mart Corp.,

636 F. Supp. 852, 854 (D.D.C. 1986)." Id. at 502.

Again, the burden is on plaintiffs to establish that this Court exercises personal

jurisdiction.  See Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998).  Plaintiffs in this

case failed to allege such facts, and the allegations against these defendants do not establish

"minimum contacts" necessary to confer personal jurisdiction in the District of Columbia.  The

mere fact that defendant Lappin is the head of the Federal Bureau of Prisons, and the Central

Office of the agency happens to be in Washington, D.C., is insufficient to establish the requisite

"minimum contacts" with the District of Columbia.  Cameron v. Thornburgh, 983 F.2d  235, 256

(D.C. Cir. 1993); Zakiya v. U.S., 267 F. Supp. 2d 47, 54 (D.D.C. 2003); Reuber v. U.S., et al.,

750 F.2d 1039 (D.C. Cir. 1984); James v. Reno, et al., 39 F. Supp. 2d 37, 42 (D.C. Cir. 1999)

(Inmate's security classification and transfer request made in Texas; both federal prisons at issue

located in either Texas or Virginia; there is no injury suffered in the District of Columbia; the

mere fact that Lappin and White are employees of the Bureau of Prisons based in D.C.

insufficient to establish requisite "minimum contacts" with District); Meyer v. Reno, 911 F.

Supp. 11, 14 (D.D.C. 1996) (Bureau of Prisons employee who works at FCI Memphis, Tennessee and three Florida State Attorneys not alleged to conduct any business or make any contracts for services and no injury alleged to have been suffered in the District of Columbia, so court cannot exercise jurisdiction over them).

The "unknown named" defendants should also be dismissed for lack of personal jurisdiction. It is well settled that unless an unnamed/unidentified defendant voluntarily makes an appearance or otherwise waives the lack of personal jurisdiction defense, the Court lacks personal jurisdiction over that individual. E.g., Young v. Quinlan, 960 F.2d 351, 356 n.9 (3d Cir. 1992). State law determines whether constructive service may be made upon John Doe defendants in tort cases. See Fed.R.Civ.P. 4(c)(2)(C)(i). The District of Columbia does not provide for such constructive service and, therefore, the claims against the John Does must be dismissed for lack of personal jurisdiction. Shipkovitz v. Mosbacher, Civ. No. 90-2159, 1991 WL 251864 (D.D.C. Nov. 12, 1991), aff'd, Civ. No. 92-5030, 1992 WL 394489 (D.C. Cir. Nov. 5, 1992) (citing Thompson v. Tanner, 287 F. 980, 989 (D.C. Cir. 1923)).

As a general rule, the use of "John/Jane Doe" to identify a defendant is not favored. Gillespie v. Civiletti, 629 F.2d 637 (9th Cir. 1980); See Wiltsie v. California Department of Corrections, 406 F.2d 515, 518 (9th Cir. 1968). In the Third Circuit, "John Doe" claims are ordinarily disregarded absent a showing by the plaintiff that they are indispensable to the litigation. Young, supra., See generally Kiser v. General Electric Corp., 831 F.2d 423, 426 n.6 (3d Cir. 1987). However, situations may arise where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, it has been held that a plaintiff should be given an opportunity through discovery to identify the unknown defendants,

18

unless it is clear that discovery would not uncover the identities or that the complaint would be dismissed on other rounds. Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978), cert. denied, 439 U.S. 970 (1978); see Wells Fargo Express Co., 556 F.2d 406, 430-31 n.24 (9th Cir. 1977); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n. 13 (1978).

The above rule is inapplicable in the instant case, because the identity of the unidentified defendants were readily available to plaintiffs prior to the filing of this civil action. Indeed, as federal employees, the names of the prison staff and contract employees are public information, and continue to be available to plaintiffs. Therefore, because plaintiffs have failed to personally serve the unidentified defendants, the Court lacks personal jurisdiction over them. As such, this case should be dismissed as to the unidentified defendants.

### F.    Plaintiffs Have Not Asserted A Valid Eighth Amendment Claim

Plaintiffs allege that defendants inflicted cruel and unusual punishment upon them and violated their Eighth Amendment rights as a result of their conditions of confinement. Even reviewing the plaintiffs' allegations in the light most favorable to them (motion to dismiss standard), the plaintiffs' complaint is not sufficient to survive defendants' motion to dismiss for failure to state a claim.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. When evaluating claims for cruel and unusual punishment, courts make a two-part inquiry: (1) whether the defendants acted with a sufficiently culpable state of mind (the "subjective component"), and (2) whether, in light of "contemporary standards of decency," the alleged deprivation was sufficiently serious to rise to the level of a constitutional violation (the "objective component"). Wilson v. Seiter, 501 U.S. 294, 298 (1991).

19

The subjective component is satisfied by showing "deliberate indifference" by prison officials. Id. at 303. See Estelle v. Gamble, 429 U.S. 97, 105 (1976) ("deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). See Whitley v. Albers, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."). To constitute cruel and unusual punishment, conduct "must involve more than ordinary lack of due care for the prisoner's safety; mere negligence will not suffice." Morgan v. Dist. of Columbia, 824 F.2d 1049, 1057 (D.C. Cir. 1987) (citing Whitley, 475 U.S. at 319).

The objective component is satisfied by showing that the conditions of confinement "involve the wanton and unnecessary infliction of pain" or are "grossly disproportionate to the severity of the crime warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). See Caldwell v. Caesar, 150 F. Supp.2d 50, 61 (D.D.C. 2001) ("Conditions of confinement will violate the Eighth Amendment if the deprivation is sufficiently serious, judged objectively, that is, when the prisoner is denied 'the minimal civilized measure of life's necessities.' ") (quoting Farmer, 511 U.S. at 834) (quoting Rhodes, 452 U.S. at 347)).

What is necessary to establish an "unnecessary and wanton infliction of pain," varies according to the nature of the alleged constitutional violation." Whitley at 320. For instance,

20

extreme deprivations are required for the conditions-of-confinement claims that plaintiffs appear to make.  Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society . . . only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

Nothing in this complaint points to this type of violation and dismissal is appropriate. Plaintiffs make an assertion that there is severe overcrowding and poor living conditions in USP Atlanta, yet Phillips does not claim any personal injury due to these conditions and Levitan vaguely claims to have fallen sick.  Levitan does not state that his illness was related to the confinement conditions and offers no proof of illness.  Instead, plaintiffs claim that their mattresses are dirty and harbor bacteria and that their cells are infested with vermin and insects. See Compl. ¶27-28.  Plaintiffs offer no factual basis for these claims and none of these claims point to how the defendants violated any of their constitutional rights.

Regarding the single incident of food poisoning, the plaintiffs allege unsanitary conditions and food handling without offering any proof.  Both plaintiffs allege that they fell ill on September 5, 2005, due to improper refrigeration, but there is no evidence that either sought or received medical attention related to the illness.  The plaintiffs fail to establish that any alleged brief illness was due to any negligence of the defendants.  In addition, a single incident of unintended food poisoning whether suffered by one or many prisoners at an institution does not constitute a violation of the Constitution.  George v. King, 837 F.2d 705, 707 (5th Cir. 1988). Plaintiffs offer no evidence or statements that they, or any other prisoners, have suffered from food poisoning except for the one instance.  No deliberate indifference can even be suggested by

one single incident of alleged food poisoning.  See Estelle v. Gamble, 429 U.S. 97, 105 (1976).

This claim could be dismissed as frivolous according to Seymour/Jones v. Oldt, Civ. No. 90-

1583, WL 29721 (E.D. Pa. March 16, 1990) (a single incident of food poisoning where no

serious medical problems resulted was not enough to raise to level of constitutional claim and

was dismissed as frivolous).

With regard to the alleged overcrowding, there is no evidence that the overcrowding was

the product of a "sufficiently culpable state of mind" on the part of prison personnel as required

under Johnson v. Lewis, 217 F. 3d 726, 731 (9th Cir. 2000), cert. denied, 532 U.S. 1065 (2001).

Routine discomfort of prison is part of the penalty that criminal offenders pay for their offenses

against society . . . only those deprivations denying minimal civilized measure of life's

necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Rhodes v.

Chapman, 452 U.S. 337, 347 (1981).  Levitan offers no specific dates when he was subject to the

alleged overcrowding, or whether the overcrowding is ongoing or was just temporary.  Phillips

states no time when he was subject to overcrowding.

Construing these claims under the liberal rules applicable to *pro se* complaints, there still

remains no arguable legal or factual basis upon which the complaint could go forward.

Plaintiffs have failed to state a claim for violation of their Eighth Amendment rights.

### G.    Plaintiffs Are Not Entitled to Declaratory Relief

Plaintiffs are seeking declaratory relief in the form of a transfer from the DCU facility to

another BOP institution for overcrowded inmates, a mandamus directing the immediate repair of

food holding and preparation equipment, and an order directing defendants not to exact punitive

measures against the plaintiffs.  <u>See</u> Compl. ¶ 50.  The statute governing prospective relief[3] in the

Prison Litigation Reform Act (PLRA), codified at 18 U.S.C. § 3626(a)(1), puts substantial

limitations on the issuance of this type of relief.  Specifically, the Act provides, "prospective

relief in any civil action with respect to 'prison conditions' (defined by the Supreme Court in

<u>Porter v. Nussle</u>, 534 U.S. 516 (2002), as "any aspect of prison life") shall extend no further than

necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The

court shall not grant or approve any prospective relief unless the court finds that such relief is

narrowly drawn, extends no further than necessary to correct the violation of the Federal right,

and is the least intrusive means necessary to correct the violation of the Federal right."  <u>See also</u>

<u>Thompson v. Gomez</u>, 993 F. Supp. 749, 754-55 (N.D. Cal. 1997), <u>rev'd on other grounds</u> in

<u>Gilmore v. People of the State of California</u>, 220 F.3d 987, 1005 (9th Cir. 2002).  This

mandatory requirement must be more than mimicking the language of the statute, and is

discussed in <u>Cason v. Seckinger</u>, 231 F.3d 777 (11th Cir. 2000); <u>see also</u>, <u>Johnson v. Breeden</u>,

280 F.3d 1308 (11th Cir. 2002).

    The statute further states, "The court shall give substantial weight to any adverse impact

on public safety or the operation of a criminal justice system caused by the relief."  Any order

that this Court might issue with respect to the plaintiffs' institution assignment directly

implicates this portion of the PLRA, in that it will have an adverse impact on the BOP's authority

to assign housing to the inmate population and properly allocate the available resources, as well

as the operation of the federal prison system.  Plaintiffs clearly do not have a right to be housed

---

    [3] The statute defines prospective relief as "all relief other than compensatory monetary
damages."  18 U.S.C. §3626(g)(7).

in an institution of their choice.  The Constitution does not create a liberty interest in being held

at, or remaining at, a given facility.  <u>Montanye v. Haymes</u>, 96 S. Ct. 2543 (1976); <u>Grayson v.</u>

<u>Rison</u>, 945 F.2d 1064 (9th Cir. 1991); <u>Beard v. Livesay</u>, 798 F.2d 874 (6th Cir. 1986); <u>Leibowitz</u>

<u>v. U.S.</u>, 729 F. Supp. 556 (E.D. Mich. 1989), <u>aff'd without opinion</u>, 914 F.2d 256 (6th Cir. 1990).


### H.    Plaintiff May Has No Standing Under Fed. R. Civ. P. 17

Pamela May is listed as a "next friend" of plaintiff Levitan in this case.  Ms. May, is not,

however, a real party in interest in this case.  She was not subject to the alleged overcrowding or

food poisoning and there is no basis for her being listed as a "next friend" plaintiff in this action.

Fed. R. Civ. P. 17 deals with issues of party capacity and states that every action shall be

prosecuted in the name of the real party in interest.  <u>See</u> Fed. R. Civ. P. 17(a).   Section 17(c)

states that incompetent or infant persons are entitled to sue by way of a next friend or by a

guardian ad litem.  Mr. Levitan, however, is neither an infant nor does he claim to be

incompetent.  Therefore, he has no basis for listing Ms. May as "next friend."  There is no

adequate explanation as to why Levitan requires a "next friend" and Levitan is clearly capable of

seeking relief as indicated by the fact that he filed this lawsuit.

A "next friend," as traditionally understood, functions as a guardian ad litem, standing in

the shoes of the real party in interest throughout the entire litigation when the real party in

interest is unable to represent himself or herself.  <u>Adem v. Bush</u>, 425 F. Supp. 2d 7 (D.D.C.

2006).  Traditionally, a "next friend" stands in the shoes of the real party in interest when he or

she cannot maintain the suit due to inaccessibility, <u>see</u> <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 162-

163 (1990), incapacity, <u>see</u> <u>Abbott v. Hancock</u>, 123 N.C. 99, 31 S.E. 268, 269 (1898) ("next

24

friend" permitted to prosecute tort action on behalf of an "insane" person); <u>Garnett v. Garnett</u>, 114 Mass. 379 (1874) ("next friend" permitted to bring divorce action on behalf of "insane" person), or infancy, <u>Blumenthal v. Craig</u>, 81 F. 320, 321-22 (3d Cir.1897).  A 'next friend' resembles ··· a guardian ad litem" who prosecutes or defends the case from start to finish on behalf of another.  <u>Morgan v. Potter</u>, 157 U.S. 195, 198 (1895).  Plaintiff May should be dismissed from this case for lack of standing.

## I.    Plaintiffs' Claims Against Defendant Zenk Under the FTCA Must Fail

### 1.    No Waiver of Sovereign Immunity

The Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 ("FTCA"), is the exclusive waiver of sovereign immunity for any loss from the tortious actions of federal agencies or employees.  <u>See</u> 28 U.S.C. § 2679(b)(1); <u>United States v. Smith</u>, 499 U.S. 160, 165-69 (1991) (FTCA immunizes individual even where tort is excluded from waiver of sovereign immunity).  To the extent that plaintiffs attempt to name defendants other than the United States in their FTCA claim, there is a limited waiver of sovereign immunity and Congress has provided only for suits against the United States.  <u>See</u> 28 U.S.C. § 1346(b)(1); <u>Scanwell Lab., Inc. v. Thomas</u>, 521 F.2d 941, 947 (D.C. Cir. 1975); <u>Richardson v. United States Dept. of Interior</u>, 740 F. Supp. 15, 20 n.10, 26 (D.D.C. 1990).  Agencies and individual government employees cannot be sued under the FTCA.  <u>See</u> 28 U.S.C. § 2679(a)(b)(1).  Therefore, the Court should dismiss plaintiffs' FTCA claims against defendant Zenk, and any of the other the named defendants, under Rule 12(b)(1) for lack of jurisdiction.

The FTCA expressly provides that any common law tort suit brought against federal employees must be treated as a suit against the United States once the Attorney General (or his

delegate) certifies that the employees acted within the scope of their employment:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court <u>shall</u> be deemed an action against the United States under the provisions of this title and all references thereto, and the United States <u>shall</u> be substituted as the party defendant.

28 U.S.C. § 2679(d)(1) (emphasis added). In this case, defendants have filed such a certification for Michael Zenk contemporaneously with this motion to dismiss. Therefore, as an individual defendant, he is entitled to immunity under Section 2679. <u>See</u> <u>United States v. Smith</u>, 499 U.S. 160, 162-63 (1991); <u>Brown v. Armstrong</u>, 949 F.2d 1007, 1010 (8th Cir. 1991). In the place of the individual defendant Zenk, the United States is substituted as the exclusive defendant for all common law tort claims such as plaintiffs' and the case against the individual defendant(s) is dismissed. <u>See also</u> <u>Sami v. United States</u>, 617 F.2d 755, 768 (D.C. Cir. 1979) (federal employees immune from defamation suit when acting "within the ambit of discretion"); <u>Trifax v. District of Columbia</u>, 53 F. Supp. 2d 20 (D.D.C. 1999) ("acting within the outer perimeter of the duties"), aff'd, 314 F.3d 641 (D.C. Cir. 2003).

Automatic dismissal of the case against individual defendant Zenk is fully consistent with the exclusivity of the tort remedies provided by the Federal Tort Claims Act, per 28 U.S.C. § 2679(b)(1). The FTCA preempts any tort actions directly based on the common law or state law, including D.C. law, against the United States, its agencies, or employees. <u>See</u> <u>Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution</u>, No. 74-1899, (D.C. Cir., June 28, 1976), reprinted in 566 F.2d 289 App. A-1, at 295-99; <u>Kline v. Republic of El Salvador</u>, 603 F. Supp. 1313, 1316 (D.D.C. 1985).

Additionally, the FTCA does not allow suits to be brought against government agencies, such as the BOP, or federal agency employees acting within the scope of their official duties. 28 U.S.C. § 2679(a). See Vanover v. Hantman, 77 F. Supp. 2d 91, 97 (D.D.C. 1999) ("Section 2679 gives federal employees absolute immunity from tort liability for acts done in the scope of their employment."); Cox v. Secretary of Labor, 739 F. Supp. 28, 29 (D.D.C. 1990) (suit against the Secretary of Labor rather than the government itself must be dismissed for lack of subject matter jurisdiction) (citing numerous cases); Galvin v. OSHA, 860 F.2d 181, 183 (5th Cir. 1988) ("an FTCA claim against a federal agency or employer as opposed to the United States itself must be dismissed for want of jurisdiction"); Stewart v. United States, 655 F.2d 741, 742 (7th Cir. 1981); Hagmeyer v. Department of Treasury, 647 F. Supp. 1300, 1304-05 (D.D.C. 1986) (dismissing FTCA claim against the Department of Treasury). Only the United States is subject to suit under this statute. Accordingly, plaintiffs' constitutional tort claims against individually-named defendant Zenk in his official capacity should be dismissed.

## 2.    Venue is Improper under the FTCA

Plaintiffs bring tort claims for negligence under the Federal Tort Claims Act. Venue for such tort claims is controlled by statute: "Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). In this case, plaintiffs are incarcerated in Atlanta, Georgia. All of the actions complained of by the plaintiffs took place in Georgia. Therefore, venue is improper in the United States District Court for the District of Columbia under 28 U.S.C. § 1402(b).

## 3.    Plaintiff Levitan's Failure to Wait for Denial of Administrative Claim

27

Plaintiff Levitan's FTCA claim was received on September 26, 2005, and the BOP mailed

an acknowledgment letter on that same date.  Approximately five months later on February 28,

2006, the BOP sent a letter denying his claim.  This suit was filed January 9, 2006.

28 U.S.C. § 2675(a) reads:

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.  The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.  The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

Levitan failed to exhaust under the FTCA by filing suit prior to receiving a written denial from

the BOP or waiting 6 months.  Exhaustion under the FTCA occurs only after a claimant has (1)

presented a federal agency with a claim describing, with particularity, the alleged injury and

damages and (2) either received a written denial of the claim from the agency or waited six

months from the date of filing without obtaining a final agency disposition.  Totten v. Norton,

421 F. Supp. 2d 115, 122 (D.D.C. 2006).  Failure to fully comply with these mandatory

administrative steps deprives the Court of jurisdiction to hear a tort claim against the federal

government.  Johnson v. DiMario, 14 F. Supp. 2d 107, 111 (D.D.C. 1998) (citing GAF Corp. v.

United States, 818 F.2d 901, 904 n.6 (D.C. Cir. 1978)).

## J.    The Case Must Be Dismissed or Transferred for Improper Venue

In contrast to an official capacity claim against a federal employee, which seeks relief

from the United States, an individual-capacity claim against a federal employee seeks recovery

28

from the personal financial assets of the employee.  Hafer v. Melo, 502 U.S. 21, 25 (1991).

Venue for plaintiffs' Bivens claims is governed by the provisions of 28 U.S.C. §1391(b), which provides in applicable part:

> (b)      A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

In Stafford v. Briggs, 444 U.S. 527, 542 (1979), the Supreme Court stated that this provision, rather than the more permissive venue provisions of 28 U.S.C. §1391(e), are applicable in Bivens actions:

> What emerges is that the bill's author, the Committees, and the Congress intended nothing more than to provide nationwide venue for the convenience of individual plaintiffs in actions which are nominally against an individual officer but are in reality against the Government.  A suit for money damages which must be paid out of the pocket of the private individual who happens to be--or formerly was-- employed by the Federal Government plainly is not one "essentially against the United States," and thus is not encompassed by the venue provisions of Section 1391(e).

Noting that Congress did not intend to require "those serving their Government the burden of defending personal damages actions in a variety of distant districts. . . ," Id., 444 U.S. at 545, the Court found that these federal officers should be treated like others who are sued for personal damages, and the provisions of 28 U.S.C. §1391(b) should govern.

Any Bivens claim interpreted by this Court against defendants Gonzales, Lappin, Holt, and Zenk, in their individual capacity, must be dismissed pursuant to Rule 12(b)(3) for improper venue.  Plaintiffs have provided no evidence that any of the events giving rise to the claim

29

occurred within the District of Columbia, therefore, venue is improper in the District of

Columbia pursuant to 28 U.S.C. § 1391(b) and Meyer v. Reno, et al., 911 F. Supp. 11, 15

(D.D.C. 1996).  Plaintiffs' complaint involves allegations related to prison conditions in Georgia.

This case should therefore be dismissed under Rule 12(b)(3), Fed. R. Civ. P.

> To the extent that any portion of this case might withstand the PLRA dismissal

arguments, it is inappropriately brought in the United States District Court for the District of

Columbia.  This complaint consists of individual claims that involve factual issues arising in the

Northern District of Georgia.  Nevertheless, 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district
> court may transfer any civil action to any other district or division where it may
> have been brought.

The United States Court of Appeals for the District of Columbia has held that cases such as this

one should not be heard in the District of Columbia, but should instead be transferred to the

judicial district where the prisoner is incarcerated, pursuant to § 1404(a).  ". . . [M]any, if indeed

not most, petitions filed by prisoners not confined in the District of Columbia and not sentenced

here originally, will tend to involve factors that make transfer to the place of incarceration

appropriate."  Starnes v. McGuire, 512 F.2d 918, 926 (D.C. Cir. 1974) (en banc).  The Court of

Appeals recognized that even if venue is technically appropriate, "there is certainly no reason

why all cases involving the construction or constitutionality of a federal statute should be

litigated in the District of Columbia."  Id. at 925.  Rather, where the records, witnesses, and

counsel for the case are located near the prison and there is no issue of national importance raised

by the complaint, "transfer of the complaint to the district of the plaintiff's incarceration is

indicated."  Id. at 933; see also Lincoln v. Bureau of Prisons, Civ. No. 96-2325, at 2 (D.D.C. May

2, 1997) ("[t]his Circuit discourages 'carpetbagging' by prisoners who are incarcerated elsewhere.")

The D.C. Circuit in Starnes set out a number of factors for a district court to use in deciding whether to transfer a civil case brought by a prisoner incarcerated outside the District of Columbia. Those factors are: (1) the prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5) whether the case involves issues of national policy that require the testimony of high-level administrators located in Washington, D.C. Starnes, 512 F.2d at 929-33.

In this case, these factors strongly support the appropriateness of transfer. This is a *pro se* case, so communication with counsel is not an issue. The majority of witnesses and records that would be involved in litigating plaintiffs' claims are all at USP Atlanta. To the extent this case survives dismissal, it should be transferred to the Northern District of Georgia, where plaintiffs were housed when the matters giving rise to this complaint took place. It is there that most of the witnesses and documents involved are located, and where jurisdiction and venue can be readily achieved. Nevertheless, defendants urge that dismissal, not transfer, is appropriate. Compare Simpkins v. District of Columbia, 108 F.3d 366 (D.C. Cir. 1997) (appropriate to dismiss insubstantial Bivens actions versus transfer).

As stated above, plaintiffs currently reside in Georgia at USP Atlanta, not in the District of Columbia. Moreover, the alleged constitutional violations occurred at USP Atlanta, which is not within the jurisdiction of the United States District Court for the District of Columbia.

31

## **CONCLUSION**

_____For all of the foregoing reasons, this action should be dismissed.  If it is not dismissed, it

should be transferred to the Northern District of Georgia pursuant to 28 U.S.C. §1404(a).

Respectfully submitted,

____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 307-1249; (202) 514-8780 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 28th day of July, 2006, I caused service of the

foregoing to be made on the *pro se* plaintiffs:

DANIEL J. LEVITAN
Reg. No. 22977-037
Federal Prison Camp
601 McDonough Boulevard, SE
P.O. Box 150160
Atlanta, GA 30315-0160

PAMELA T. MAY, Next of Friend
DANIEL J. LEVITAN
1257 Greystone Lane
Pensacola, FL 32514
850/477-5674

JOHN L. PHILLIPS
Reg. No. 10527-075
Federal Prison Camp
601 McDonough Boulevard, SE
P.O. Box 150160
Atlanta, GA 30315-0160


_____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney